(62 South. 631.)

No. 19,488.

LEON GODCHAUX CO., Limited, v. DI MAGGIO.

(June 9, 1913. Rehearing Denied June 30, 1913.)

*(Syllabus by the Court.)*

1. FRAUDULENT CONVEYANCES (§ 299*) — PROOF REQUIRED.

Where one claims that a sale is a mere simulation, he must offer proof that will at least create a doubt as to the genuineness of the sale. Circumstances such as will lead to the belief that the supposed vendor still retains the control of and authority over the property must, at least, be shown.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 876–890; Dec. Dig. § 299.*]

2. EVIDENCE (§ 77*)—PRESUMPTIONS — WITNESSES.

Since plaintiff had the power to summon the supposed vendees to testify as to the facts connected with the sale, but failed to do so, he is not in a position to invoke the presumption that they would have testified adversely to their interest. If plaintiff believed this, it could have confirmed this belief by calling them as witnesses.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97; Dec. Dig. § 77.*]

3. DAMAGES (§ 160*) — ATTORNEY'S FEES — PROOF.

Where attorney's fees are claimed they must be proved as any other item of damage.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 439, 445, 448; Dec. Dig. § 160.*]

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by the Leon Godchaux Company, Limited, against Rosario Di Maggio. Plaintiff caused a writ of fieri facias to issue upon a judgment rendered in his favor, and persons claiming the property seized under such writ filed a third opposition. From a decree for the third opponents, plaintiff appeals. Modified and affirmed.

Henry L. Sarpy and E. J. Meral, both of New Orleans, for appellant. Peter Stifft, of New Orleans, for intervening appellees.

BREAUX, C. J. Early in the 1900's, plaintiff became the creditor of Rosario Di Maggio, the defendant. In the year 1911, it obtained a judgment against him. About five months prior to the date plaintiff obtained the judgment, defendant sold his property to his children of age and one of the lots to his stepson.

These lots were worth about $2,000. The purchasers executed their notes in favor of the vendor for the price, and no cash, and they assumed the payment of a mortgage resting upon the property.

The property was community till the death of Di Maggio's wife in 1909.

The date of the marriage between defendant and his late wife is one of the disputed points, but it suffices to know that the property belonged to the community.

Plaintiff caused a writ of fieri facias to issue under its judgment, and the property which defendant had sold as before mentioned was seized.

The purchasers of the property, before mentioned, filed a third opposition and claimed the property as their own, alleged that its seizure was illegal, and asked for damages.

The defendant in injunction answered, and alleged that the titles claimed by plaintiffs in injunction were simulated, and prayed for a judgment rejecting plaintiffs' demand.

The judge of the district court decided that the seizure was illegal, that the property belonged to the opponents, and sustained the injunction and allowed $50 attorney's fee in each seizure.

After the death of Madam Di Maggio, one-half of the property was inherited by the children, who became the owners by purchase from their father, as just above stated. As to this half of the property, plaintiff had no right to seize it. There is no positive, direct evidence that at the date of the sale by the father to the children they knew that the father was insolvent, although it may be presumed that they were aware of it.

The Di Maggios were poor and had very

little of the world's goods. The insolvency may be inferred from the statement of Rosario, made at the time that he testified, that he was unable to pay the plaintiff, Godchaux & Co.

[2] One of the points made on the part of Godchaux & Co. is that the plaintiffs in injunction did not take the witness stand and testify as to the validity of the sale. Much of this objection loses its force since the enactment of statute 126 of 1908. Plaintiff had all of the defendants subpœnaed as witnesses; they were in court at the time. Neither party chose to examine them as witnesses.

Possession. The usual declaration in the deed was that the vendees were in possession.

Third opponents during the trial had occasion to object to the admissibility of certain testimony, and in objecting took the position that the only issue before the court was one of possession. While this was not entirely accurate as to the number of issues, it suggests that plaintiff should have proven who had possession of the property. It made no such attempt. There is not a word going to prove that the vendor retained the least authority over the property.

Plaintiff, the Godchaux Company, has repeatedly cited the Pruyn Case, 51 La. Ann. 320, 25 South. 125, as pertinent to this case. Each case stands upon its own facts, it has been repeatedly held. The vendor, Pruyn, admitted that he was in possession of the property at the time of the sale, and was in possession and occupied the property at the date of the trial under circumstances which made it quite evident that he still exercised the right of an owner over the property which had been seized. Here, it was entirely different, it was not even intimated that the vendor was in possession. The evidence was that the vendees had paid interest on their notes. This, as the vendor, Rosario Di Maggio, was not in possession, is pertinent in proving the reality of the sale.

[1] It is settled that one who attacks a sale as simulated (the vendee in possession under title valid on face of the papers) should at least create some doubt as to its reality by evidence. That was held in the following case (a leading case upon the question at issue). It is quite pertinent. New Orleans Acid & Fertilizer Co. v. Gillory & Co., 117 La. 821, 42 South. 329.

There was no doubt, in our opinion, created in this instance by any of the evidence of the case.

The following will serve for illustration: Ostensibly in good faith the owner of property sells to his children and receives from them their notes representing the price on which they in time pay interest; after the purchase, they go into possession and occupy the property. If it be rural property, they cultivate it; if urban, let us say, they occupy the dwelling. The creditor who ventures to seize the property thus conveyed and in possession of the vendee takes unlimited chances; unless he has proof that the sale is simulated of such a character as leaves nothing to doubt if he seizes directly, he may fail and be mulcted in damages. He cannot recover if there is no evidence before the court proving simulation.

It must not be forgotten that these purchasers had an interest in the property inherited by them from their late mother and that it was quite natural for them to seek to own the property. At the time that they bought, there was nothing of record to serve as a notice not to buy. They were free to enter into any legitimate transaction with their father, the vendor.

The questions carefully considered in Willis v. Scott, 33 La. Ann. 1026, are quite similar. The points are clearly stated. After reading that decision, and applying the principles decided to the facts of the present case, we find no good ground to annul the

judgment. The owner in possession under title should not be ruthlessly ousted from his possession.

To conclude on this point: Property held under title, after delivery following the sale and continuous possession, cannot be seized with any degree of certainty as to the result. If there is simulation under the facts and circumstances stated, a direct action is the advisable remedy.

As relates to damages: In Willis v. Scott, cited supra, damages were allowed, but attention was called to conflicting decisions upon the subject. In the present case, no evidence was offered at all. There is a flat demand for an amount. It was granted by the district court.

[3] Fees of attorney are susceptible of proof as any other claim. We do not think that damages for fee of attorney should be allowed for seizure under the facts here and without the least proof.

For reasons stated, it is ordered, adjudged, and decreed that each judgment appealed from be amended by striking therefrom (from each judgment) $50 allowed for attorney's fee, as in case of nonsuit. As amended, the judgment is affirmed at appellee's costs.