132 So.2d 85 (1961)
Marilyn Wright BROUSSARD, Plaintiff and Appellee,
v.
Firmin BROUSSARD et al., Defendants and Appellants.
No. 310.
Court of Appeal of Louisiana, Third Circuit.
July 12, 1961.
*86 Arceneaux & Beslin, by James C. Arceneaux, Jr., and Denald Beslin, Rayne, for defendants-appellants.
H. Purvis Carmouche, Jr., Crowley, for plaintiff-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is an action for an absolute divorce based on allegations that the parties have lived separate and apart for more than two years, in which plaintiff also seeks a partition of the community property, the custody of her minor son, attorney's fees and support for the child. Plaintiff further demands judgment annulling and setting aside as a simulation or fraudulent transaction a certain promissory note and mortgage executed by plaintiff's husband on November 26, 1956, affecting property alleged to belong to the community of acquets and gains theretofore existing between the parties. Sidney Broussard, who plaintiff alleges is the holder of the note, was also named as a party-defendant.
After trial of the case on its merits, the trial judge rendered judgment in favor of plaintiff, decreeing an absolute divorce between the parties, granting to plaintiff the custody of and support for her minor child, and decreeing the note and act of mortgage executed by plaintiff's husband on November 26, 1956, to be null, void and of no effect insofar as the undivided one-half interest of plaintiff in and to the community property is concerned. The judgment further reserves to each of the parties the right to file appropriate proceedings for the partition, liquidation and settlement of the community, and for attorney's fees. Defendant Firmin Broussard has appealed from that judgment, but the remaining defendant, Sidney Broussard, has neither appealed nor answered the appeal.
On joint motion of counsel, the appeal was dismissed insofar as it relates to that part of the judgment of the trial court which decrees an absolute divorce between plaintiff and her husband. In this court appellant complains only of that portion of the trial court's judgment which decrees the note and mortgage executed by him to be null and void as a simulation or a fraudulent transaction. Accordingly, all parties agree that the sole and only issue presented on this appeal relates to the validity of that note and mortgage.
The wife has a vested interest in the community property at the time it is acquired, and she is entitled to one-half of the assets of the community at its dissolution, whether the dissolution be brought about by death, divorce or by judicial separation. In the event the community is dissolved, therefore, the wife is entitled to maintain an action against her husband to annul a sale or mortgage of the community property executed by her husband prior to the dissolution of the community in defraud of the wife's rights. LSA-C.C. Art. 2404; Oliphint v. Oliphint, 219 La. 781, 54 So.2d 18; Thigpen v. Thigpen, 231 La. 206, 91 So. 2d 12; Van Asselberg v. Van Asselberg, *87 164 La. 553, 114 So. 155; Howard v. Howard, La.App. 2 Cir., 96 So.2d 345.
The evidence establishes that plaintiff and her husband separated on November 26, 1956, under circumstances which made it apparent to both parties that they intended to continue to live separate and apart. On the same date plaintiff's husband, Firmin Broussard, met his brother, Sidney Broussard, in the office of an attorney and notary in Rayne, Louisiana, and at that time plaintiff's husband executed the note and mortgage which plaintiff now seeks to have annulled. The note is for the principal sum of $20,000, is made payable to "Holder or Future Holders" on or before five years from date, and it is paraphed for identification with an act of mortgage executed by Firmin Broussard on that same date. The act of mortgage which secures this note is also in favor of "Holder or Future Holders." The mortgage was executed by Firmin Broussard before a notary and two witnesses at the same time the note was executed, and it covers and affects substantially all of the community property which then existed between plaintiff and the mortgagor, consisting of several tracts of land with improvements, including at least twenty rent houses.
At the time this note and mortgage were executed, Sidney Broussard handed to plaintiff's husband the sum of $4,500, in cash, and in addition thereto he gave Firmin Broussard a check for $15,500 drawn on the Rayne State Bank and Trust Company. The check was presented for payment and was paid by the bank the following day, November 27, 1956. The evidence establishes, however, that on the morning of November 26, 1956, Sidney Broussard had a balance in his checking account in the Rayne State Bank and Trust Company of only $954.16. During that day, there was deposited to his account in that bank the additional sum of $14,800, the deposit consisting of a check for $2,800 from plaintiff's husband, the person to whom the loan allegedly was made, and a check for $12,000 from the attorney and notary who prepared the mortgage.
Firmin Broussard testified that he cashed the check on the same day the mortgage was executed, and that accordingly he received the entire $20,000 in cash, most of it being in ten and twenty dollar bills, but that the cash which he obtained at that time included at least one five-hundred dollar bill. He did not deposit any part of this money in a bank, although he previously had maintained bank accounts, and he testified that he spent the entire $20,000 within a period of from two to four months on liquor and gambling, and for the purchase of used cars to be resold in connection with his junk business. He further testified that he was unable to sell the cars which he bought and that he still has them.
The statements of Firmin Broussard to the effect that he used a portion of these funds for the purchase of used cars is not corroborated by any other evidence, and in our opinion his testimony is somewhat refuted by that of his bookkeeper. The "operating schedules" prepared by this bookkeeper, who also is an accountant, purporting to show the income, expenses, profits and other data relating to Firmin Broussard's business operations during the years 1956, 1957 and 1958, do not show the receipt of this alleged loan, the payment of the sum of $2,800 to Sidney Broussard on the same day the loan allegedly was made, or any large or unusual purchases during that period. These schedules, in fact, show that during the two year period of 1956 and 1957, Firmin Broussard made purchases aggregating $11,483.97, while his sales during the same period amounted to $18,791.14, leaving him a substantial profit. The bookkeeper stated that Firmin Broussard told him about the $20,000 loan as he was making the closing entries for the year 1956, but that he did not enter this information in the schedules or statements which were introduced in evidence purporting to show Broussard's assets and liabilities.
*88 Although Firmin Broussard maintains that he spent the proceeds of the $20,000 loan within four months after he received them, he was unable to recall or to testify as to a single occasion on which he spent any of those funds. He could not recall when or where he cashed the $500 bill which he says was included in the money which he received.
Sidney Broussard, who allegedly made the loan, testified that he did not talk to his brother about this indebtedness during the period of more than two and one-half years which elapsed between the date of the mortgage and the date of the trial, although he says that no payments were made on it. Also, as has already been pointed out, Sidney Broussard has not appealed from the judgment which decrees the mortgage and note to be a simulation.
The evidence further shows that on a prior occasion, about two years earlier, Firmin Broussard and his brother, Sidney, joined in executing another note and act of mortgage similar to this one, under almost identical circumstances. Plaintiff and her husband had previously separated, and following that separation plaintiff instituted a separation suit against her husband on August 27, 1954. On the day that suit was instituted, Firmin and Sidney Broussard appeared before the same attorney and notary in Rayne, and at that time Firmin Broussard executed a note for the principal sum of $45,000 payable to "Holder or Future Holders," on or before five years from date, and an act of mortgage securing that note in favor of "Holder or Future Holders," covering all of the community property which then existed between him and his wife. Firmin Broussard at that time received a check from Sidney Broussard for the sum of $45,000, although the evidence shows that the latter did not have sufficient funds in the bank to pay a check in that amount. That check was never cashed. Firmin Broussard and his wife became reconciled about two weeks after the suit was filed, and one week after this reconciliation, the uncashed check was destroyed and the mortgage was cancelled. Counsel for defendants in this case concedes that the 1954 transaction was a simulation.
The jurisprudence is established to the effect that in attacking an authentic act as being a simulation, the burden of proof rests primarily upon the party making the attack to establish the facts upon which the alleged invalidity is based. If one alleging a simulation, however, produces evidence of circumstances which create highly reasonable doubts or suspicions as to the honesty of the transaction, a prima facie case is considered as having been; made out and the burden of proof is shifted to the party relying on the validity of that transaction to show that a valid sale or mortgage existed. New Orleans Acid & Fertilizer Co. v. O. Guillory & Co., 117 La. 821, 42 So. 329; Leon Godchaux Co. v. Di Maggio, 133 La. 199, 62 So. 631; First National Bank of Ruston v. Jones, 186 La. 269, 172 So. 155; Howard v. Howard, supra; Smith v. Smith, 239 La. 688, 119 So.2d 827, 829; Burch v. Nichols, La.App. 3 Cir., 126 So.2d 713.
The evidence in the instant suit, in our opinion, creates highly reasonable doubts or suspicions as to the honesty or validity of the promissory note and act of mortgage which plaintiff attacks here, and we think plaintiff has made out a prima facie case of simulation. Our conclusion to that effect is based on the following facts and circumstances which we think have been established: (1) the note and mortgage were executed on the same day that plaintiff and her husband separated; (2) the transaction was between close relatives, being a mortgage from plaintiff's husband to his brother; (3) a substantial part of the consideration or proceeds of the alleged loan were paid in currency, and that portion which was paid by check was immediately converted into currency; (4) at the time this note and mortgage were executed *89 the mortgagee, Sidney Broussard, did not have sufficient funds with which to make such a loan, and the fact that he obtained some of the funds which he needed to complete this loan from the very person to whom the loan allegedly was made constitutes, in our opinion, a highly suspicious circumstance; (5) the same parties, Firmin Broussard and his brother, adopted substantially the same procedure two years earlier when they admittedly executed a simulated act of mortgage under the same circumstances; and (6) following this transaction no part of the alleged indebtedness was paid and no demands for payment were made.
Under all of the facts and circumstances produced here, therefore, we conclude that a prima facie case of simulation has been made out by plaintiff, and the burden of proof has been shifted to defendants to establish the validity of the note and mortgage.
The proof establishing that a sum of money and a check, amounting to the aggregate sum of $20,000 were physically handed to Firmin Broussard at the time the mortgage and note were executed constitutes persuasive evidence as to the validity of the transaction. The mere fact, however, that this sum of money changed hands in the presence of the notary at the time the note and mortgage were executed is not sufficient to establish by a preponderance of the evidence that the loan was actually made, because the funds could have been returned to the mortgagee immediately thereafter. The burden of proof rests upon Firmin Broussard, and since other facts have been established which create highly reasonable doubts and suspicions as to whether a loan was actually made, we feel that the burden of proof has not been met by merely proving that the amount of the loan was physically handed to the alleged borrower at the time the note and mortgage were executed.
In this case the evidence shows that at least a part of the funds which allegedly were loaned to Firmin Broussard were funds furnished by the borrower himself. In our opinion the evidence does not support Firmin Broussard's testimony that he lost a portion of these funds in purchasing used cars which he could not sell, since the evidence shows that he made only moderate purchases during that time, and proceeds of sales greatly exceeded the amount spent in purchases. Also, we find it difficult to accept Firmin Broussard's unsupported testimony to the effect that he spent or lost a substantial portion of the proceeds of this loan on liquor and gambling within two to four months after the loan was made since he apparently was unable to produce any corroborating evidence to that effect or to point out a single time or incident when any part of the money was spent on those activities. Finally, the fact that defendants, acting in collusion, attempted to use the same device two years earlier, in 1954, at which time they admittedly executed a simulated mortgage under the same circumstances, indicates to us that the note and mortgage being attacked here also are simulations and were executed solely for the purpose of defrauding plaintiff of at least a portion of her interest in the community.
In our opinion the evidence supports the conclusion reached by the trial court to the effect that the note and mortgage executed by Firmin Broussard on November 26, 1956, are null and void as being a simulated or fraudulent transaction. For that reason the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant.
Affirmed.