430 So.2d 376 (1983)
John A. HOLLIER, et al., Plaintiffs-Appellees,
v.
John A. GALTIER, Defendant-Appellant.
No. 82-790.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
*377 Thompson, Sellers & Bundick, Dennis R. Bundick, Abbeville, for defendant-appellant.
Cooper, Ortego & Woodruff, Calvin Woodruff, Jr., Charles Sonnier, Abbeville, for plaintiffs-appellees.
J. Nolan Sandoz, Abbeville, for defendant-appellee.
Before FORET, CUTRER and DOUCET, JJ.
DOUCET, Judge.
This is an action for reformation of an Act of Sale involving real property situated in Vermilion Parish. From an adverse judgment, defendant appeals alleging the trial court erred in admitting into evidence the deposition of plaintiff John Hollier (who died before trial) and further erred in subsequently ordering the reformation of the Act of Sale. We affirm.
On September 8, 1967, John Hollier donated one acre of his property[1] to his grandchildren, then, by Cash Deed, sold property to his daughter and son-in-law (The Toucheques)[2]. The deed to the Toucheques allegedly contained a mistake and described their property as being within the one (1) acre belonging to the grandchildren rather than adjacent thereto, the deed reading "west of" instead of "east of" the grandchildren's property. The Toucheques lived on the land for seven years without incident.
*378 On March 20, 1974, John Hollier sold the rest of his land (11 acres more or less) to John Galtier. John Galtier inspected both the property and the public records which revealed the Toucheques' interest albeit the whereabouts of their property in relation to the remaining tract was less than certain. The problem was compounded by John Hollier's age and cursory familiarity with the English language, French being his primary language.
Shortly after purchasing the property John Galtier evicted the Toucheques. Alerted to the error in the deed, John Hollier (vendor) and the Toucheques (plaintiffs herein) executed an Act of Correction (which was recorded) and requested John Galtier execute a voluntary reformation. Galtier refused and this suit followed.
Pending suit Mr. Hollier, an elderly man, fell ill and was hospitalized. On April 15, 1975, defense counsel for John Galtier received notice of a deposition to be taken the same day at the hospital. Notice was received approximately 15 minutes prior to the assigned time for the taking of the deposition (11:30 a.m.). Defense counsel timely objected to the deposition on the grounds of lack of reasonable notice, pursuant to LSA-C.C.P. Art. 1453[3], and secured a Protective Order forbidding the taking of same.[4] Nevertheless, counsel for plaintiff proceeded with the deposition at 12:20 p.m., believing Mr. Hollier's death was imminent. (Mr. Hollier died 18 days later on May 3, 1975).[5]
Thereafter, on June 6, 1975, before plaintiffs' filing of a Notice of Lis Pendens, John Galtier transferred the property to his brother, Firman Galtier, thereby making the latter a "third party". By Supplemental and Amending Petition Firman Galtier was added as party defendant.
At trial on the merits, the district judge admitted the decedent John Hollier's deposition into evidence. After hearing all the evidence, judgment was rendered in plaintiffs' favor, ordering reformation of the Acts of Sale, for reasons assigned as follows:
"The evidence establishes that when this Cash Sale was executed between John Galtier and John Hollier, John Galtier knew of *379 the existing discrepancy in the property descriptions. He was also familiar with the property in question, as he had been on the property on numerous occasions. The property owned by Alvin Touchet and Cynthia Babineaux Touchet was enclosed within a fence and was visually outside of the bounds of the remainder of the tract. The evidence further indicates that at the time the Cash Sale between John Hollier and John Galtier was executed, the defendant neither believed this tract to be included within the property to be sold, nor did he intend to purchase this lot. Further, John Hollier was not conversant or literate in English, and there is insufficient evidence to establish the fact that he understood the terms of the written act of the Cash Sale to John Galtier. There is no evidence to show that he ever gave any indication to the defendant, John Hollier, of his intention to convey the one hundred (100') foot by one hundred forty-eight (148') foot tract in question. In fact, the evidence indicates that his intention was to the contrary. He knew that seven (7) years previously he had sold this tract to his step son-in-law and step daughter; that they had lived on the property for a time, and that they continued to use, maintain, and enjoy the property. Under the jurisprudence, John Hollier, upon his discovery of the mutual error in the act of Cash Sale dated March 20, 1974, was permitted to correct the error in the instrument to express the true intention of the parties. It is a well settled principle that either party to a contract is always permitted to correct any error in the instrument so as to make the contract express truly and correctly the intention of the parties. Reynaud v. Bullock [195 La. 86], 196 So. 29 (La.S.Ct.1940). When a written instrument does not express the true contract or agreement of the parties the burden of proof rests on the one seeking reformation of the instrument to establish the mutual error or mistake by clear and convincing proof. Waller v. Colvin [151 La. 765], 92 So. 328 (La.S.Ct.1922); Walker v. Jim Austin Motor Co., 162 So.2d 135 (La.App. 1st Cir. 1964, writ refused); Agurs v. Holt [232 La. 1026], 95 So.2d 644 (La.S.Ct.1957); Kemp v. Beasley, 188 So.2d 425 (La.App.3d Cir.1966); Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La.App.2d Cir.1982). In Pipes v. Pipes, 343 So.2d 329 (La.App.2d Cir.1977), the Court held that this burden was discharged by the party seeking reformation because he showed, among other things, that the deed contained a description which purported to convey a twenty (20) acre tract that the vendor did not own but had sold some five (5) years previously and that a party must not be presumed to have intended to sell that which he did not own.
The evidence shows that John Galtier made a search of the public records prior to purchasing the tract from John Hollier. A third party dealing with property is charged with knowledge revealed by recorded instruments affecting property. Blevins v. Manufacturers Record Publishing Co. [235 La. 708], 105 So.2d 392 (La.S.Ct.1958). `It is also the law that all persons have constructive notice of the existence and contents of a recorded instrument affecting immovable property (United Gas Public Service Company v. Roy, et al, 147 So. 705 (La.App. 2d Cir.1933); and where such an instrument contains language that fairly puts a purchaser on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts he is to be considered as having bought at his own risk and peril.' Breaux-Renoudet Cypress-Lumber Company v. Shadel, et al [62 La.Ann. 2094], 28 So. 292 (La.S.Ct.1900); Hasslocher, et al v. Recknagel, et al, 160 So.2d 421 (La.App. 2d Cir.1964); Brown v. Johnson, 11 So.2d 713 (La.App. 2d Cir.1943); JudiceHenry-May Agency, Inc. v. Franklin, 376 So.2d 991 (La.App. 1st Cir.1980). Although the September 8, 1967 Act of Cash Sale from John Hollier to Cynthia Babineaux Touchet and Alvin Touchet contained an ambiguous description, title passes to that property which the parties actually intended to buy and sell notwithstanding an error in the description of the property conveyed. Agurs v. Holt [232 La. 1026], 95 So.2d 644 (La.S.Ct.1957). The act, through ambiguous, was sufficiently accurate to convey the one hundred forty-eight (148') by one hundred (100') foot *380 tract in question and it was properly recorded in the conveyance records. The recitals contained in the Act of Sale fairly placed the purchaser on inquiry as to title. Therefore, John Galtier is presumed to have known that John Hollier could not have intended to sell that which he no longer owned. It must also be presumed that he could not have intended to purchase property from one not the owner thereof. The plaintiffs have established by evidence which is clear and convincing that the recital in the Act of Sale dated March 20, 1974 did not express the true intention of either party to the act and therefore, plaintiffs are entitled to have the act reformed. Firman Galtier's remedy is in the form of an action in warranty against his vendor."
From that judgment defendant Firman Galtier appeals assigning as error: (1) The introduction into evidence of John Hollier's deposition, and (2) Ordering the Act of Reformation against appellant particularly where no Notice of Lis Pendens was filed prior to his acquisition of the property.
Appellant properly notes that reasonable notice of the taking of a deposition is a prerequisite to its introduction into evidence at trial pursuant to LSA-C.C.P. Arts. 1438 and 1450[6]. cf: Fed.R.C.P. 30(a); Highstreet v. Regency Apartment Hotel, 337 So.2d 536 (La.App. 4th Cir.1976), app. denied 340 So.2d 994. As aforementioned, although counsel for defendant John Galtier had time to secure a protective order, he *381 was unable to attend the deposition, the timing of which was necessitated by John Hollier's impending death. While we view the admission into evidence of John Hollier's deposition to be highly questionable, we find any error therein to be harmless inasmuch as other evidence was adduced sufficient to establish mutual error so as to justify reformation of the Act of Sale.
We next address the issue of whether reformation of the contract was a proper remedy where the filing of a Notice of Lis Pendens followed the conveyance between the Galtiers.
As stated in Noe v. Roussel, 310 So.2d 806, 821 (La.1975) "[A] third party purchasing in good faith may rely upon the ownership status of real property as reflected on the fact of the public roads. LSA-C.C.P. Art. 3751; McDuffie v. Walker, 125 La. 152, 51 So. 100." (emphasis added) We note that John Galtier testified that he told his brother Firman Galtier of the pending suit when the conveyance between the brothers was consummated. Firman Galtier did not testify at trial, nor was there any evidence adduced on his behalf to indicate Firman has ever possessed the property once held by Hollier. Additionally, the recorded Act of Correction should have put Firman Galtier on inquiry as to the title to the disputed tract.
In Ingram v. Freeman, 326 So.2d 565 (La.App. 3rd Cir.1976), writ refused 329 So.2d 755, this court stated:
"[A] presumption of simulation arises when the party asserting the simulation produces evidence which creates a highly reasonable doubt or suspicion concerning the honesty or validity of the transaction. Such a showing establishes a prima facie case of simulation and the burden is thereby shifted to the defendants to demonstrate the validity of the transaction under attack. Smith v. Smith, 239 La. 688, 119 So.2d 827 (La.1960); Teche Concrete, Inc. v. Moity, 168 So.2d 347 (La. App. 3rd Cir.1964), writ refused 247 La. 251, 170 So.2d 509; Dare v. Myrick [226 La. 732, 168 So.2d 845], supra; Laborde v. Dauzat, 158 So.2d 637 (La.App. 3rd Cir.1963), writ refused 245 La. 731, 160 So.2d 595; Landry v. Landry, 140 So.2d 706 (La.App. 3rd Cir.1962); Howard v. Howard, 96 So.2d 345 (La.App.2nd Cir.1957)."
Although not addressed directly by the trial court, we find, from our review of the record, that the plaintiffs produced sufficient evidence to avail themselves of the abovementioned presumption of simulation, whereas there was no substantial evidence to support a valid motive for the sale.
In view of the totality of circumstances, we find that Firman Galtier was not a purchaser in good faith. Therefore, the trial judge did not err in ordering reformation of the Acts of Sale.
For the reasons assigned hereinabove, the judgment appealed is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] The property belonging to John Hollier is more fully described as follows:

A certain tract of land lying and being situated in the Parish of Vermilion, Louisiana, containing 12 arpents, more or less, being bounded on the North by Numa Broussard or assigns, South by Public Road, East by Nelton Broussard, et als and West by Clerphe Delcambre; being designated as Lot 2 of a partition effected by the heirs of Arthur Delcambre and appearing of record in Volume 144, page 212, Entry # 67755 of the Conveyance Records of the Parish of Vermilion, Louisiana; together with improvements and buildings thereon situated and thereto appertaining.
[2] The dimensions of the Toucheques' property was one hundred feet (100') in width by one hundred forty-eight feet (148') in depth.
[3] Art. 1453. Objection to irregularities in notice; waiver

All errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice.
Acts 1976, No. 574, § 1.
[4] The record does not indicate at what time on April 15, 1975 the Protective Order was signed. Nor does the record indicate whether plaintiff's counsel received notice of the Protective Order. The Order was secured pursuant to LSA-C.C.P. Art. 1426 which provides:

Art. 1426. Protective orders
Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) That the discovery not be had;
(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;
(5) That discovery be conducted with no one present except persons designated by the court;
(6) That a deposition after being sealed be opened only by order of the court;
(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; or
(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Article 1469 apply to the award of expenses incurred in relation to the motion.
Acts 1976, No. 574, § 1.
[5] The wife and heirs of John Hollier have been substituted as party plaintiffs.
[6] Art. 1438. Notice of examination; time and place; subpoena duces tecum

A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action. The notice shall state the time and place for taking the deposition and the name and address of each person to be examined, if known, and, if the name is not known, a general description sufficient to identify him or the particular class or group to which he belongs. If a subpoena duces tecum is to be served on the person to be examined, the designation of the materials to be produced as set forth in the subpoena shall be attached to or included in the notice.
The court may for cause shown lengthen or shorten the time for taking the deposition. Acts 1976, No. 574, § 1.
Art. 1450. Use of depositions
At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Article 1442 or 1448 to testify on behalf of a public or private corporation, partnership, or association, or governmental agency which is a party may be used by an adverse party for any purpose.
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which, in fairness, should be considered with the part introduced, and any party may introduce any other parts.
Substitution of parties does not affect the right to use depositions previously taken; and, when an action in any court of this state, or the United States or of any state has been dismissed and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor. Acts 1976, No. 574, § 1.
(emphasis added)