LYNAL, INC.

v.

PATRICK PETROLEUM COMPANY,
Patrick Petroleum Corporation
of Michigan.

Civ. A. No. 84–2443.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Oct. 2, 1984.

Robert L. Redfearn, John C. Herbert, Simon, Peragine, Smith, & Redfearn, New Orleans, La., for plaintiff.

Ewell E. Eagan, Jr., Nathalie M. Walker, Gordon, Arata, McCollam, Stuart & Duplantis, New Orleans, La., for defendants.

## OPINION

VERON, District Judge.

In this suit, Lynal, Inc. ("Lynal") seeks injunctive relief restraining Patrick Petroleum and Patrick Petroleum of Michigan (collectively "Patrick") from conveying their undivided working interest in certain mineral leases, the "Oak Grove Property." Lynal claims that it is entitled to a preferential right to purchase Patrick's interests in the property under the joint operating

agreement executed between Patrick, Lynal and various other working interest owners. Lynal seeks to restrain sale of Patrick's interests until Lynal is given proper notice of the terms of the sale and afforded an adequate opportunity to exercise the preferential right to purchase. Patrick's answer asserts that the preferential purchase provision was to be stricken out by agreement of the parties and that the failure to do so was the result of a mere clerical error. Patrick asks the Court to reform the operating agreement by striking out the "preferential right to purchase" clause. The matter came on for hearing before the Court on September 27, 1984. The Court rules that Lynal is not entitled to further injunctive relief, whether of a preliminary or permanent nature, and that Patrick is entitled to a judgment reforming the joint operating agreement, in accordance with the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.

By a letter agreement dated September 4, 1980, Patrick, Lynal and the other working interest owners agreed to "execute an operating agreement ... cotaining [sic] the following special provisions and modifications: ... b. Deletion of the preferential right to purchase provision...." *Patrick Exhibit No. 1,* art. VII. Mr. Douglas Lynn, President and founder of Lynal, does not dispute the authenticity of his signature on this letter agreement. Nor does he dispute that the letter reflected the intent of the parties at the time that it was signed.

2.

The preferential right to purchase provision was not deleted from the text of the joint operating agreement executed by the parties and dated September 8, 1981. Article VIII (G) of the agreement sets forth a preferential right to purchase provision.

3.

The reference to the preferential right to purchase provision in Article VIII (G) was stricken from the table of contents in the joint operating agreement.

4.

From the execution of the letter agreement through the execution of the joint operating agreement, there were no discussions between Patrick and Lynal concerning a preferential right to purchase. In fact, the subject did not come up again until the summer of 1984. This fact is established by the testimony of Mr. Lynn, as well as that of Mr. Rod C. Roberts, a former Patrick Landman who negotiated the Oak Grove contract.

5.

Patrick and Lynal did discuss other changes in the joint operating agreement contemplated by the letter agreement, but both parties remained silent as to a preferential right to purchase provision.

6.

As a standard practice, Mr. Roberts would delete the preferential right to purchase provision from all joint operating agreements that he negotiated.

7.

The deletion process involved striking out the reference in the table of contents and then striking the provision out of the text.

8.

The failure to strike the preferential purchase provision out of the text in this case was due to a clerical and proofreading error.

9.

In a letter dated July 9, 1984, John Murdy, a Vice-President of Patrick, sent a letter to Lynal requesting the company to "waive your preferential right of purchase, and any other restrictions" on the property covered by the joint operating agreement.

10.

The letter was one of numerous form letters sent out after Patrick sold substantially all of its assets to Ladd Petroleum Corporation for a price of $196,900,000.00.

**11.**

John Murdy was not involved with the negotiations leading to the particular joint operating agreement involved here.

**12.**

John Murdy did not consult with Mr. Roberts, the landman who negotiated the Oak Grove contract in regard to the particular provisions of the agreement prior to sending out the letter.

**13.**

In a letter dated July 23, 1984, Mr. Lynn responded for Lynal, stating that Patrick had not furnished sufficient notice of the terms of the sale and that Lynal would refrain from waiving its rights under Article VIII (G).

**14.**

In a letter dated July 30, 1984, Mr. Murdy referred to "Lynal Inc.'s Preferential Right of Purchase, as provided in that certain Operating Agreement dated September 8, 1981," enclosed a copy of Patrick's proxy statement concerning the sale, and stated that "it is Patrick Petroleum Company's opinion that it has complied with the provisions of Article 8, Paragraph G of the aforesaid Operating Agreement." Lynal Exhibit No. 7.

Mr. Murdy did not discuss the particulars of the Oak Grove negotiation with Mr. Roberts prior to sending the July 30, 1984 letter.

## CONCLUSIONS OF LAW

**1.**

The Court has jurisdiction over this case on removal pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(a).

**2.**

The joint operating agreement should be reformed to delete the provisions providing for a preferential right to purchase.

■ Either party to a contract is always permitted to correct any error in the written instrument evidencing the contract so as to make the instrument express truly and correctly the contract intended by the parties. *E.g., Hollier v. Galtier*, 430 So.2d 376, 379 (La.App.3d Cir.1983); *see also* La. Civ.Code art. 1762 ("The contract must not be confounded with the instrument in writing by which it is witnessed.") The burden falls upon the party seeking reformation to establish a mutual error or mistake by clear and convincing proof. *E.g., Hollier*, 430 So.2d at 379. Parol evidence is admissible for this purpose. *E.g., Walker v. Jim Austin Motor Co.*, 162 So.2d 135, 138 (La. App.1st Cir.), *writ refused*, 246 La. 354, 164 So.2d 353 (1964).

■ Patrick has carried its burden of establishing mutual error or mistake by clear and convincing proof. The antecedent letter agreement clearly expresses the parties' intent to delete the preferential right to purchase provision. The fact that reference to the provision is deleted from the table of contents in the joint operating agreement indicates that the presence of the provision in the text is the result of a mere clerical oversight. And most significantly, the witnesses for both Patrick and Lynal testified that there were no further negotiations regarding a preferential right to purchase from the time of the letter agreement through the final execution of the joint operating agreement. The evidence that the parties originally intended to delete the provision, that they never negotiated a change from that position, and that the deletion process was apparently begun, but not completed, is clear and convincing proof, to this Court, that the inclusion of the provision does not reflect the true intent of the parties. This clear proof of the antecedent agreement and the error in committing it to writing entitles Patrick to reformation of the written instrument. *See, Walker*, 162 So.2d at 139.

Lynal nonetheless argues that any ambiguity created by striking out the index reference but not the provision itself should be construed against the obligor and preparer, Patrick. Lynal grounds this argument on Louisiana Civil Code article 1958. Yet article 1958 is but one of many codal articles governing the interpretation of agreements. *See* La.Civ.Code arts.

1945–1962. The overriding principle is found in article 1950, which directs a court to "endeavor to ascertain what was the common intention of the parties." La.Civ. Code art. 1950. The Court is satisfied that the evidence just discussed demonstrates that the parties intended to delete the preferential purchase provision. Article 1949 specifically authorizes reference to other agreements to resolve "anything doubtful" in a written instrument. Resort to the letter agreement resolves the doubt raised by the deletion in the index[1] in favor of striking out the preferential purchase provision in the text. Relying on the letter agreement to resolve the doubt is particularly appropriate here because the parties never negotiated on the same point again prior to execution of the final written instrument.

Lynal also points to the 1984 Patrick-Lynal correspondence as evidence that Patrick intended for the preferential purchase provision to be included in the contract. Lynal finds support for this argument in article 1956, which states that, in cases of doubtful intent, "the construction put upon [the contract], by the manner in which it has been executed by both parties, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." La.Civ.Code art. 1956. As was the case with article 1958, this article merely furnishes "a" rule of construction that is subordinate to the overriding goal of determining the common intent of the parties. Here, the form-letter correspondence in regard to a "preferential right to purchase, and any other restrictions" on conveyance of the property was sent in an attempt to send a "catch-all" notice on a host of properties. When Lynal refused to waive a preferential purchase right on this first notice, Patrick did respond with correspondence directed specifically to the preferential purchase provision found in the text of the joint operating agreement. Yet nothing in the record indicates to this Court that this letter was sent after a conscious

decision by Patrick to depart from the earlier letter agreement. Rather, the more likely conclusion to be drawn is that the person sending the letter, who did not participate in the 1980 negotiations, ended his investigation into the matter when he found a preferential purchase provision in the text of the written instrument and proceeded on the assumption that the provision was supposed to be there. That is, the July 30, 1984 correspondence from Mr. Murdy to Mr. Lynn was merely a consequence of the prior clerical error, not a confirmation of the error as the intent of Patrick in 1980. Thus, the Court does not find that this evidence outweighs the other evidence demonstrating that the parties intended to delete the preferential purchase provision from the joint operating agreement.

3.

■ Lynal is not entitled to preliminary or permanent injunctive relief restraining Patrick from selling the Oak Grove property. Reformation of the joint operating agreement to delete the reference to a preferential right to purchase precludes Lynal from establishing the substantial likelihood of success required for preliminary injunctive relief and further moots Lynal's claim for a permanent injunction based upon the provision.

4.

The plaintiff shall bear all costs of these proceedings.

---

1. Lynal has cited no authority, and the Court can find none, that precludes a finding of ambiguity based upon an alteration in the index to

an agreement. In any event, facial ambiguity is not a prerequisite to reformation. *See Walker,* 162 So.2d at 139.